1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10
11

| | |
|---|---|
| MICHAEL JOHN BAEZ,<br><br>   Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>   Defendant. | Case No.  1:23-cv-00494-SAB<br><br>ORDER GRANTING PLAINTIFF'S MOTION<br>FOR SUMMARY JUDGMENT; DIRECTING<br>THE CLERK OF THE COURT TO ENTER<br>JUDGMENT IN FAVOR OF PLAINTIFF<br>MICHAEL JOHN BAEZ AND AGAINST<br>DEFENDANT COMMISSIONER OF SOCIAL<br>SECURITY AND DIRECTING THE CLERK<br>OF THE COURT TO CLOSE THIS MATTER<br><br>(ECF Nos. 14, 16, 17) |

12
13
14
15
16
17
18

## I.

19

## INTRODUCTION

20

Michael John Baez ("Plaintiff") seeks judicial review of a final decision of the Commissioner

21

of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits

22

pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs,

23

which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

24

 Plaintiff requests the decision of the Commissioner be vacated and the case be remanded for

25

further proceedings, arguing the ALJ erred by (1) failing to properly weigh the opinion of Dr. Previte

26

and failing to properly articulate the supportability and consistency with the record; and (2) failing to

27

---

28

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned
to Magistrate Judge Stanley A. Boone for all purposes.  (See ECF Nos. 5, 11, 12.)

include work related limitations consistent with the nature and intensity of Plaintiff's limitations and not proffering clear and convincing reasons to reject Plaintiff's symptom testimony.

For the reasons explained herein, Plaintiff's Social Security appeal shall be granted.

## II.

## BACKGROUND

### A.    Procedural History

Plaintiff filed a previous application for a period of disability and disability insurance benefits on June 4, 2019, that was initially denied on October 30, 2019, and denied upon reconsideration on March 2, 2020.  That determination was a final determination.  (AR 15.)

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on August 26, 2020.  (AR 184.)  Plaintiff's application was initially denied on November 4, 2020, and denied upon reconsideration on May 4, 2021.  (AR 205-09, 213-18.)  Plaintiff requested and received a hearing before Administrative Law Judge David J. Begley ("the ALJ").  Plaintiff appeared for a hearing on December 8, 2021.  (AR 138-67.)  On April 7, 2022, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 12-30.)  On February 2, 2023, the Appeals Council denied Plaintiff's request for review.  (AR 1-3.)

Accordingly, the application time period for the current application is from March 2, 2020, through December 31, 2020.  (AR 16.)

### B.    The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, April 2, 2022:

1.  Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2020.

2.  Plaintiff did not engage in substantial gainful activity from September 30, 2015, through his date last insured of December 31, 2020.

3.  Through December 31, 2020, the date last insured, Plaintiff had the following severe impairments: right shoulder osteoarthritis with impingement and partial thickness rotator cuff tear, incomplete rotator cuff tear of left shoulder, chronic obstructive

pulmonary disease/emphysema, and chronic pain syndrome.

4.  Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

5.  After careful consideration of the entire record, the ALJ found that, for the period from March 2, 2020 through December 31, 2020, the date last insured, Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b), except: he was precluded from climbing ladders, ropes, and scaffoldings; he was limited to occasional climbing of ramps and stairs; he was limited to occasional balancing, stooping, kneeling, crouching, and crawling; he was prohibited from reaching overhead bilaterally; he needed to avoid concentrated exposure to extreme cold; to irritants such as fumes, odors, dust, gases and poorly ventilated areas; he needs to avoid concentrated exposure to slippery and uneven surfaces; he needed to avoid concentrated exposure to hazardous machinery, unprotected heights and open flames; and he needed work with simple, routine, and repetitive tasks.

6.  Through the date last insured, Plaintiff was unable to perform any past relevant work.

7.  Plaintiff was born on February 27, 1969, and was 51 years old, which is defined as an individual closely approaching advance age, on the date last insured.

8.  Plaintiff has at least a high school education.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not he has transferable job skills.

10. Through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could have performed.

11. Plaintiff was not under a disability, as defined in the Social Security Act, at any time from September 30, 2015, the alleged onset date, through December 31, 2020, the date last insured.

(AR 18-30.)

**III.**

**LEGAL STANDARD**

**A.     The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits.  Accordingly, while Plaintiff seeks only disability insurance benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

1  claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of

2  proof from step one through step four.

3  Before making the step four determination, the ALJ first must determine the claimant's

4  RFC.  20 C.F.R. § 416.920(e); <u>Nowden v. Berryhill</u>, No. EDCV 17-00584-JEM, 2018 WL 1155971,

5  at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite his limitations" and

6  represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1);

7  416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are

8  not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p,

9  <u>available</u> <u>at</u> 1996 WL 374184 (Jul. 2, 1996).[4]  A determination of RFC is not a medical opinion,

10 but a legal decision that is expressly reserved for the Commissioner.  <u>See</u> 20 C.F.R. §§

11 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for

12 determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine

13 residual functional capacity."  <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049 (9th Cir. 2001).

14 At step five, the burden shifts to the Commissioner, who must then show that there are a

15 significant number of jobs in the national economy that the claimant can perform given his RFC,

16 age, education, and work experience.  20 C.F.R. § 416.912(g); <u>Lounsburry v. Barnhart</u>, 468 F.3d

17 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines

18 ("grids") or rely upon the testimony of a VE.  <u>See</u> 20 C.F.R. § 404 Subpt. P, App. 2; <u>Lounsburry</u>,

19 468 F.3d at 1114; <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-

20 step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical

21 testimony, and for resolving ambiguities.' "  <u>Ford</u>, 950 F.3d at 1149 (quoting <u>Andrews v. Shalala</u>,

22 53 F.3d 1035, 1039 (9th Cir. 1995)).

23 **B.    Standard of Review**

24 Congress has provided that an individual may obtain judicial review of any final decision

25 of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

26

27 [4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  <u>Han v. Bowen</u>, 882 F.2d 1453, 1457 (9th Cir. 1989); <u>see</u> <u>also</u> <u>Avenetti v. Barnhart</u>, 456 F.3d 1122, 1124 (9th Cir. 2006).

28

determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

///

# IV.

## DISCUSSION AND ANALYSIS

Plaintiff alleges that the ALJ erred by (1) failing to properly weigh the opinion of Dr. Previte and not articulating the persuasiveness of the opinion based on the opinion's supportability and consistency with the record; and (2) failing to offer clear and convincing reasons for rejecting his subjective complaints.

### A.    Whether the AJL Erred by Failing to Address the Persuasiveness of Dr. Previte's Opinion

Plaintiff states that the regulations provide that the ALJ must articulate how a medical opinion was considered and how persuasive the ALJ finds all of the medical opinions.  (Pl.'s Motion for Summary Judgment or Remand ("Mot.") 7, ECF No. 14.)  Plaintiff contends that the ALJ did not consider that opinion of Dr. Previte who found that he was permanent and stationary, was precluded from overhead work and should not lift or carry form chest level or above with the right arm objects weighing greater than 15 pounds and could only use his right hand for 4-6 hours out of an 8-hour workday.  Plaintiff argues that the ALJ did not consider or evaluate this opinion in violation of the regulations and the failure to articulate the persuasiveness of the opinion is reversible error.  (Mot. 8.)  Plaintiff asserts that the ALJ failed to consider the opinion because it was issued in his Worker's Compensation case, and it was included in the prior adjudicated period.  (Mot. 8-9.)  Plaintiff asserts that the clear functional limitations opined by Dr. Previte conflict with the RFC and were required to be considered, and the ALJ cannot refuse to consider the opinion because it was included in the prior adjudicated period.  (Mot. 9.)

Defendant counters that the ALJ reviewed a number of medical opinions and prior administrative findings and did not adopt the opinion of Dr. Previte.  Defendant contends that the only opinions regarding the limited time period at issue were those of the State agency medical consultants who found that Plaintiff could perform work at the light exertional level with postural and environmental limitations and that he could not reach overhead with the right upper extremity. (Def.'s Responsive Brief ("Opp") 10, ECF No. 16.)  Defendant argues that Dr. Previte's opinion is not inconsistent with the RFC finding that allows use of both arms to lift and carry 20 pounds and

1 precludes reaching overhead with either arm.  Defendant asserts that the ALJ only needs to explain

2 why probative evidence was rejected.    Further, Defendant argues that the ALJ did adequately

3 explain why the opinion was not adopted.  Although the ALJ stated he would not address the

4 persuasiveness of the opinion, he did make clear that he would not adopt the report due to lack of

5 support and consistency with the record.  (Opp. 11.)  Defendant asserts that the ALJ found that Dr.

6 Previte's opinion was based on the presumption that further significant intervention would not be

7 likely, but this was inconsistent with other evidence because Dr. Kupperman discussed that further

8 treatment was possible, including surgery.  (Opp. 11-2.)  Defendant also contends that the ALJ

9 found that Plaintiff's subsequent treatment was effective, and he experienced improvement with

10 physical therapy and medication.  Additionally, Defendant asserts that the ALJ considered that Dr.

11 Lee reviewed the record and found Dr. Previte's opinion to be without substantial support.

12 Defendant argues that this satisfies the requirement that the ALJ consider Dr. Previte's opinion.

13 (Opp. 12.)

14          Plaintiff replies that Defendant's argument that the ALJ considered the persuasiveness of

15 Dr. Previte's opinion is unavailing as it is contradicted by the ALJ's own statement.  (Pl.'s Reply

16 ("Reply") 2, ECF No. 17.)  Plaintiff argues that the ALJ did not weigh Dr. Previte's opinion against

17 the remaining records, actual treatment, and objective findings.  Plaintiff contends that the refusal

18 to weigh the opinion is a legal error because the duty to weigh all medical opinions is not optional.

19 Plaintiff argues that the harm in this error is that Dr. Previte's opinion is more restrictive than the

20 RFC.

21          1.    <u>Legal Standard</u>

22          Where, as here, a claim is filed after March 27, 2017, the revised Social Security

23 Administration regulations apply to the ALJ's consideration of the medical evidence.  <u>See</u>

24 Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg.

25 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated

26 regulations, the agency "will not defer or give any specific evidentiary weight, including

27 controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including

28 those from [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a); 416.920c(a).

Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources.  See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).  As recently acknowledged by the Ninth Circuit, this means the 2017 revised Social Security regulations abrogate prior precedents requiring an ALJ to provide "clear and convincing reasons" to reject the opinion of a treating physician where uncontradicted by other evidence, or otherwise to provide "specific and legitimate reasons supported by substantial evidence in the record," where contradictory evidence is present.  Woods v. Kijakazi, 32 F.4th 785, 788–92 (9th Cir. 2022).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency.  Woods, 32 F.4th at 791 (citing 20 C.F.R. §§ 404.1520c(a), (b)(2)).  Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be." 20 C.F.R. § 404.1520c(c)(1).  Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. § 404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how he considered the [other

remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue.  20 C.F.R. §§ 404.1520c(b)(2)–(3).  Further, the ALJ is "not required to articulate how he considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).  Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how he considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

        2.    ALJ's discussion of Dr. Previte's opinion

        The ALJ discussed the opinion evidence from the prior adjudicated period.

> Current applicable Social Security regulations state that an opinion concerning disability provided by another agency is not to be discussed in a decision relating to an individual's ability to work [], as the determination of disability is an issue reserved to the Commissioner.  The record includes files for the claimant's claim for worker compensation benefits for a period from July 15, 2015 to January 2, 2020 from a prior folder.  (Ex. 3F).  Those records include statements from providers relating to temporary limitations relating to the claimant's claim for worker compensation benefits, as well as assessments of percentage of impairment under AMA guidelines.  The record also includes opinion evidence from providers made before the period under consideration, which is the period from March 3, 2020 through December 31, 2020.  The undersigned has reviewed all of the medical records in the current folder, but with respect to the opinion evidence the period preceding March 3, 2020, the undersigned notes that the March 2, 2020 denial of the claimant's Title II claim at the reconsideration level is a final determination.  The undersigned does not find grounds for reopening that determination.  As such, the undersigned has not reviewed the opinion evidence in the prior folder for persuasiveness.  However, in making this decision, the undersigned has reviewed all of the records in the current folder, including those which originated in a prior folder.  The undersigned has considered the longitudinal history of the claimant's current impairments.

(AR 26.)  The ALJ also discussed the opinion of Dr. Previte.

> The undersigned notes that on June 30, 2017, Marshall S. Lewis, MD, conducted an orthopedic evaluation and opined that the claimant could return to work with the following restrictions: no excessive use of the right hand and arm, no forceful gripping or grasping, no lifting or working with the arms above shoulder level. (Ex. 3F, p. 676).  The undersigned notes that those limitations are remote limitations and relate to the claimant's worker compensation claim.  Dr. Lewis noted that the claimant's employer did not accept those restrictions.  (Ex. 3F, p. 676).  In a November 19, 2019 report, which precedes that period, William Previte, DO, provided such ratings, and stated that the claimant was precluded from using a force greater than 15 pounds in pushing, pulling, and reaching with his right arm, was precluded from repetitive overhead work, and was prohibited from lifting and carrying from chest level or above with the right arm objects weighing greater than

15 pounds.  He labeled those restrictions as return to work limitations.  (Ex. 3F, p. 12-13).  He also stated that he based his opinion on an assumption that significant intervention did not appear to be likely, and he opined that unrestricted activity regarding the claimant's right shoulder would not appear to be achievable.  (Ex. 3F, p. 12-13).  Although the limitations in his assessment are somewhat consistent with the claimant's medical records for the period under consideration, they were made before the period under consideration and relate to the claimant's claim for worker compensation benefits.   He stated that his impairment ratings under AMA guidelines, which assign percentages of impairment are based on a presumption that further significant intervention would not be likely, and relate to the claimant's claim for worker compensation benefits.  As noted above, on April 14, 2020, Eli S. Kupperman, MD, an orthopedist, discussed further interventional treatment options, including surgery.  (Ex. 9F, p. 4).  The claimant reported that he continues to seek an orthopedist to evaluate a surgical treatment option.  In his October 14, 2019 State agency consultative examination report from a prior folder, Roger Wagner, MD, opined that the claimant was limited to medium work, with occasional lifting overhead with his right upper extremity, and frequent pushing and pulling with that extremity.  He stated that there were no limitations with respect to the claimant's left extremity, and no limitations with respect to the claimant's workplace environmental activities.  (Ex. 2F, p. 6).  Dr. Wagner based his opinion on a one-time examination made before the period under consideration.  As discussed, the undersigned is not evaluating that opinion for persuasiveness as Dr. Wagner made that opinion during a previously adjudicated period.  For the reasons discussed above, including Dr. Kupperman's April 14, 2020 report, the undersigned finds that with respect to the period from March 3, 2020 to December 31, 2020, the claimant has reasonably been limited to work within the residual functional capacity adopted above. (Ex. 9F, p. 1 et seq.).

(AR 26-7.)

3.   Analysis

**a.  Whether the RFC is consistent with Dr. Previte's opinion**

Initially, the Court addresses Defendant's argument that Dr. Previte's opinion is consistent with Plaintiff's RFC.  The ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b), except: he was precluded from climbing ladders, ropes, and scaffoldings; he was limited to occasional climbing of ramps and stairs; he was limited to occasional balancing, stooping, kneeling, crouching, and crawling; he was prohibited from reaching overhead bilaterally; he needed to avoid concentrated exposure to extreme cold; to irritants such as fumes, odors, dust, gases and poorly ventilated areas; he needs to avoid concentrated exposure to slippery and uneven surfaces; he needed to avoid concentrated exposure to hazardous machinery, unprotected heights and open flames; and he needed work with simple, routine, and repetitive tasks.

The ALJ found that, for the reasons discussed in the opinion, Plaintiff's chronic pain

1    resulting from his shoulder impairments has reasonably limited him to work with simple, routine,

2    and repetitive tasks.  In addition, as there was a diagnosis of incomplete rotator cuff tear or rupture

3    of left shoulder, not specified as traumatic, the residual functional capacity adopted above prohibits

4    overhead reaching bilaterally.  (AR 27.)

5         Dr. Previte provided an orthopedic agreed medical evaluation re-evaluation on November

6    16, 2019.  (AR 485-96.)  Dr. Previte opined that Plaintiff "is precluded from use of force greater

7    than 15 pounds in pushing, pulling and reaching with the right arm.  He is precluded from repetitive

8    overhead-work and should not lift or carry from chest level or above with the right arm objects

9    weighing greater than 15 pounds."  (AR 492.)  Plaintiff argues that Dr. Previte opined that Plaintiff

10   could only use his right hand 4 to 6 hours in an 8-hour workday.  (Mot. 8.)  However, review of the

11   return to work voucher shows that Dr. Previte opined that Plaintiff could only use his right hand for

12   pushing/pulling for 4 to 6 hours per day, but there were no restrictions for grasping with his hands

13   bilaterally.  (AR 496.)

14        The ALJ found that Plaintiff was able to perform light work which is defined as follows:

15        Light work involves lifting no more than 20 pounds at a time with frequent lifting
          or carrying of objects weighing up to 10 pounds. Even though the weight lifted may
16        be very little, a job is in this category when it requires a good deal of walking or
          standing, or when it involves sitting most of the time with some pushing and pulling
17        of arm or leg controls. To be considered capable of performing a full or wide range
          of light work, you must have the ability to do substantially all of these activities. If
18        someone can do light work, we determine that he or she can also do sedentary work,
          unless there are additional limiting factors such as loss of fine dexterity or inability
19        to sit for long periods of time.

20   20 C.F.R. § 404.1567(b).  Since light work requires lifting no more than 20 pounds at a time, and

21   Dr. Previte opined that Plaintiff was precluded from use of force greater than 15 pounds in pushing,

22   pulling, and reaching, the Court finds that the RFC is not consistent with Dr. Previte's opinion.

23        **b.    The ALJ erred by not addressing persuasiveness of Dr. Previte's opinion**

24        The ALJ specifically stated that he was not addressing the persuasiveness of the medical

25   opinions that were included in the prior file because they were issued in the context of Plaintiff's

26   Worker's Compensation claim or were considered in the prior adjudication.  However, in the

27   absence of evidence to undermine the credibility of the medical report, the purpose for which it is

28   obtained is not a legitimate reason for rejecting it.  Reddick v. Chater, 157 F.3d 715, 726 (9th Cir.

1    1998); see also Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002) ("the ALJ may not

2    disregard a physician's medical opinion simply because it was initially elicited in a state workers'

3    compensation proceeding, or because it is couched in the terminology used in such proceedings.").

4    The ALJ noted that the determination of disability is an issue reserved for the Commissioner, but

5    here, Dr. Previte opined functional limitations related to Plaintiff's shoulder injury and the opinion

6    was relatively close in time to the current period.  The opinion issued on November 16, 2019, and

7    the current period began March 2, 2020.

8           The regulations provide that when a medical source provides one or more medical opinions

9    or prior administrative findings, the Commissioner "will consider those medical opinions or prior

10   administrative medical findings from that medical source together using the factors listed in

11   paragraphs (c)(1) through (c)(5). . .." 20 C.F.R. § 404.1520c(a).  Further, the regulations require

12   the ALJ to articulate "how persuasive we find all of the medical opinions and all of the prior

13   administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b).

14          Although this opinion had been considered during the prior adjudication, it was issued

15   within months of the current time period and was therefore relevant to Plaintiff's level of

16   functioning and should have been considered.  Accordingly, the Court finds that the ALJ erred by

17   failing to consider persuasiveness of the opinion of Dr. Previte.

18          Defendant argues that the ALJ adequately addressed the supportability and consistency of

19   Dr. Previte's opinion.  The ALJ did discuss Dr. Previte's opinion.

20          The undersigned notes that the State agency disability determination explanation at
     the  reconciliation level, which was signed by Dr. Lee, cited Dr. Previte's November
21   16, 2019 report,  from William J. Previte, DO, and stated that Dr. Previte's report
     was without substantial support. (Ex. 3A, p. 16).  For the reasons discussed above,
22   including the nature of that report as a worker compensation assessment, and the
     document's inclusion in a prior folder relating to a claim for which there was a final
23   determination made on March 2, 2020, the undersigned has not evaluated Dr.
     Previte's report for persuasiveness. (Ex. 3F, p. 12-13).  However, the undersigned
24   notes that Dr. Previte based his assessment on a presumption that further significant
     intervention would not be likely, and relate to the claimant's claim for worker
25   compensation benefits.  As noted above, on April 14, 2020, Eli S. Kupperman, MD,
     an orthopedist, discussed further interventional treatment options, including surgery.
26   (Exs. 3F, p. 12-13; 9F, p. 4).

27   (AR 27.)

28          Even assuming that the discussion that Dr. Lee found Dr. Previte's opinion to be without

                                                    13

1  substantial support was adequate, the additional reasoning does not address the issue of consistency

2  with the other medical records.  The ALJ found that Dr. Previte based his assessment on the

3  presumption that significant intervention would not be likely and that Dr. Kupperman had discussed

4  further interventional treatments.  However, Plaintiff had not obtained any further interventional

5  treatments other than physical therapy.  (AR 24.)  Plaintiff testified that he had lost his medical

6  insurance and had been covered by Medi-Cal for the past two and a half years.  He was trying to

7  obtain a referral for an orthopedic physician and a pain management specialist.  (AR 25, 153.)

8          Defendant argues that the ALJ's reviewed Plaintiff's subsequent effective treatment with

9  physical therapy and mediation that supported the RFC finding.  (Opp. 12.)  However, the Court

10 cannot affirm on a reason not cited by the ALJ in his opinion.  Connett, 340 F.3d at 874.  The ALJ

11 did not discuss the consistency of Dr. Previte's opinion with the other medical evidence in the

12 record.  Since Dr. Previte's opinion is more restrictive than the RFC, the Court finds that the error

13 was not harmless, and this matter must be remanded for the ALJ to consider the persuasiveness of

14 Dr. Previte's opinion in determining Plaintiff's RFC.

15         Accordingly, Plaintiff's motion for summary judgment shall be granted on this ground.

16     **B.     Whether the ALJ Erred by Rejecting Plaintiff's Symptom Complaints**

17         Plaintiff contends that the ALJ erred by failing to offer clear and convincing reasons to reject

18 his symptom testimony and failing to include functional limitations caused by his impairments in

19 formulating the RFC.  (Mot.11-2.)  Plaintiff first argues that the ALJ's findings that his treatment

20 was conservative is disingenuous because he had received aggressive intervention prior to his

21 application for benefits and was recommended to have additional aggressive intervention that he

22 was not fortunate enough to receive prior to his date last insured.  Plaintiff contends that the ALJ

23 merely summarized Plaintiff's medical history and asserted that it did not support his allegations.

24 Plaintiff asserts that this fails to state a basis for discounting his symptoms, especially his pain.  (AR

25 12.)

26         Defendant counters that the ALJ properly considered Plaintiff's testimony that he had

27 chronic pain from his right shoulder to his right hand and that he basically had no use of his right

28 arm whatsoever in a work status; that almost any movement elicited pain at a level 10 that was

constant and caused migraine headaches; and that his right shoulder had atrophied along the shoulder blade and that sitting in a chair caused an extreme amount of pain in his shoulder.  (Opp. 3-4.)   Defendant argues that the ALJ considered that Plaintiff did not have surgery as part of his Worker's Compensation claim; he had been covered by Medi-Cal for two years at the time of his hearing; and when asked about the discrepancy testified that he had been trying to see a pain management doctor for five months who he hoped would refer him to a surgeon.  Defendant contends that the ALJ also considered that Plaintiff's physicians had prescribed medication that Plaintiff agreed had been helpful in addressing his pain; and that at the time of the hearing, Plaintiff was not taking any pain medication and said he could comfortably lift thirty pounds on his left side, one handed.  (Opp. 4.)

Defendant contends that the ALJ discussed Plaintiff's conservative treatment that yielded improvements in his pain.  Plaintiff was provided pain medication that he stated provided 60-70 percent relief with morphine and 30-40 percent relief with Norco.  Plaintiff also had physical therapy that had given him more movement without pain, especially passively.  Plaintiff was also using a TENS unit that provided some relief while using it and that relief persisted for a little while after using the machine.  (Opp. 6.)  Defendant states that the ALJ noted that Plaintiff's physical therapy providers noted that Plaintiff was able to tolerate more exercise and had improved shoulder flexion and that physical therapy helped his neck pain so he could drive and cooking was easier.  (Opp. 6-7.)   Defendant contends that Plaintiff reads the ALJ's decision narrowly and the ALJ adequately stated his rationale for rejecting Plaintiff's symptom testimony.  Defendant asserts that the ALJ properly considered Plaintiff's treatment history, that Plaintiff had not undergone a surgery after reinjuring his shoulder, inconsistencies in Plaintiff's reported symptoms, and that his actual activities contradicted his testimony.  (Opp. 7-8.)

Plaintiff replies that Defendant attempts to controvert the ALJ's summary of the evidence into an explanation for rejecting his symptoms testimony, but this cannot substitute for an adequately supported agency decision.  (Reply 3.)

///

///

1.   <u>Legal Standard</u>

A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; <u>see also</u> <u>Orn</u>, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.").  Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  <u>See</u> <u>Garrison v. Colvin</u>, 759 F.3d 995, 1014 (9th Cir. 2014); <u>Smolen</u>, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  <u>Garrison</u>, 759 F.3d at 1014; <u>Smolen</u>, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  <u>Lambert v. Saul</u>, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive.  The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.  In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.  <u>Valentine v. Astrue</u>, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); <u>see also</u> <u>Lambert</u>, 980 F.3d at 1277.

In addition to the medical evidence, factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  <u>See</u> <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1163 (9th Cir. 2014); <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008); <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1040 (9th

Cir. 2007); <u>Smolen</u>, 80 F.3d at 1284.  Thus, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  SSR 16-3p, at *5.

       2.   <u>Analysis</u>

The ALJ considered a September 1, 2020 adult disability report, completed by Plaintiff. Plaintiff alleged that emphysema, heart disease, and a right shoulder injury limited his ability to work.  (AR 22, 355.)   In a December 6, 2020 prehearing brief, Plaintiff's representative alleged that right shoulder impingement and acromioclavicular joint arthritis with a partial thickness rotator cuff tear, an incomplete rotator cuff tear of the left shoulder, chronic pain syndrome, and bilateral carpal tunnel syndrome limited Plaintiff's ability to work.  (AR 22, 401-02.)   At the hearing, Plaintiff testified that he had chronic pain due to a shoulder injury. He stated that he has chronic pain from his right shoulder to his right hand.  He stated that almost any movement of his arm elicits pain at a level of 10/10, and that he had no use in his right arm.  (AR 22, 147, 154.)  He complained that cold exacerbates his pain.  (AR 22, 154.)  He stated that he has constant pain in his right shoulder.  (AR 22, 150, 154, 157.)  He complained of poor sleep.  (AR 22, 159.)  He stated that his shoulder pain causes intermittent migraine headaches.  (AR 22, 161.)  He stated that he sees a personal physician and a cardiologist on a regular basis.  (AR 22, 152.)   He reported having intermittent chest pain, which is treated with nitroglycerine.  (AR 22, 162.)  He stated that he uses a nebulizer on a daily basis for chronic obstructive pulmonary disease.  (AR 22, 162-63.)  He estimated that he could lift 30 pounds with his left side one handed comfortably.  (AR 22, 161.)

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, his statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision.  (AR 22.)  The ALJ considered that at the hearing, Plaintiff stated that two doctors had recommended additional shoulder surgery, but he had not yet undergone such surgery.  (AR 23, 153.)

a.      **Contradiction with the medical evidence**

Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence."  See Vertigan, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); see also 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").  Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide an additional reason for discounting the testimony.  See Burch, 400 F.3d at 680–81.

Nevertheless, the medical evidence "is still a relevant factor in determining the severity of [the] claimant's pain and its disabling effects."  Burch, 400 F.3d at 680–81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).  Furthermore, Ninth Circuit caselaw has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records, deeming the latter sufficient on its own to meet the clear and convincing standard.  See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) ("The ALJ … identified several contradictions between claimant's testimony and the relevant medical evidence and cited several instances of contradictions within the claimant's own testimony.  We will not reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence."); Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (affirming ALJ's determination claimant's testimony was "not entirely credible" based on contradictions with medical opinion)) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); see also Stobie v. Berryhill, 690 Fed. App'x 910, 911 (9th Cir. 2017) (finding ALJ gave two specific and legitimate clear and convincing reasons for rejecting symptom testimony: (1) insufficient objective medical evidence to establish disability during the insured period and (2) symptom testimony conflicted with the objective medical evidence); Woods v. Comm'r of Soc. Sec., No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May

13, 2022) ("While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be sufficient." (emphasis in original)).  In applying the clear and convincing standard, the Ninth Circuit affirmed "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  Carmickle, at 533 F.3d at 1161.

In addressing Plaintiff's medical record, the ALJ considered treatment notes from PRO-PT. Plaintiff was seen on May 5, 2020, and the ALJ considered a physical therapy progress report signed by Charles W. Sherrill, PT, and Alicia Buss, PTA which states that Plaintiff thought that physical therapy had given him more movement without pain, especially passively.  He stated that he had less pain, as long has he did not push his limits.  He reported that showering and washing his hair were easier, and that he could shop, but that he needed to reach upper shelves with his left arm.  He stated that driving was a little better, as there was less tightness in his neck.  He stated that he was still waiting to see an orthopedist in Santa Barbara.  (AR 24, 1798.)  The ALJ found that the report does not support a finding that Plaintiff had a complete loss of functionality in his right upper extremity during the period under consideration.  (AR 24.)

The ALJ also considered a July 2, 2020 report signed by those providers which notes that Plaintiff was able to tolerate more exercise including the body blade for stabilization.  The providers noted that Plaintiff had more shoulder flexion when doing pulleys.  (AR 24, 1770, 1815.)  Plaintiff reported that he had no pain at the visit.  (AR 1770.)

The ALJ considered a July 7, 2020 report from those providers which notes that Plaintiff reported that therapy had helped him with his neck and it does not bother him anymore, and that he could look to drive without a problem.  Plaintiff stated that cooking was easier unless it involved reaching forward or overhead activities, which continued to be difficult.  He reported that sleeping was horrible, and that he was still waiting to see an orthopedist in Santa Barbara.  (AR 24, 1817.)

The ALJ's finding that Plaintiff's allegation that he had completely lost use of his right arm was contradicted by the medical record has substantial support in the record.  The Court finds that the ALJ provided a clear and convincing reason to reject Plaintiff's symptom testimony.  Carmickle, at 533 F.3d at 1161.

### b.     Conservative Treatment

Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of the impairment. Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). The ALJ considered that during the period from March 3, 2020 through December 31, 2020, Plaintiff had received conservative treatment, including physical therapy. (AR 23.) Plaintiff argues that this is incorrect because Plaintiff had three prior shoulder surgeries, however his last surgery was in 2012. Plaintiff's current shoulder issue is related to a work-related injury in June 2015 in which he was lifting a chair for work. (AR 23, 474.)   The ALJ noted that during the relevant time period, Plaintiff had been receiving narcotic medication which he reported helped to relieve his pain symptoms. (AR 23-4.) The ALJ considered a March 24, 2020 visit in which Plaintiff reported pain in his right shoulder at a level of 7-8 without medication, that was improved by 60 to 70 percent with pain medication. Plaintiff reported a 30 to 40 percent relief of pain with Norco. (AR 24, 1667, 1669.) Plaintiff's prescription for morphine was refilled. (AR 24, 1670.) The ALJ also considered the above referenced physical therapy records noting that Plaintiff reported improvement with physical therapy. (AR 24-25.)   The ALJ also noted that although Plaintiff had lost his insurance, he had been covered under Medi-Cal for approximately two and a half years prior to the hearing. (AR 25, 153.)

Courts do find that physical therapy and steroid injections that do not alleviate the condition do not support an adverse credibility finding. Hydat Yang v. Colvin, No. CV 14-2138-PLA, 2015 WL 248056, at *6 (C.D. Cal. Jan. 20, 2015). However, here the medical record supports that ALJ's finding that Plaintiff only received physical therapy and narcotic medications that helped to relieve his pain and symptoms. Accordingly, substantial evidence supports the ALJ's finding, and the Court finds that the ALJ provided a clear and convincing reason to reject Plaintiff's testimony regarding the severity of his symptoms.

### c.     Daily activities

As noted above, the AJL found that Plaintiff stated physical therapy records note that Plaitiff stated he had less pain, as long has he did not push his limits. He reported that showering and washing his hair were easier, and that he could shop, but that he needed to reach upper shelves with

his left arm.  He stated that driving was a little better, as there was less tightness in his neck.  (AR 24, 1798.)  The ALJ found that the report does not support a finding that Plaintiff had a complete loss of functionality in his right upper extremity during the period under consideration.  (AR 24.)

"An ALJ may also consider whether the claimant engages in activities inconsistent with the alleged symptoms." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022).  Ninth Circuit caselaw demonstrates that ADLs may be grounds for discounting allegations that an impairment is so severe it is totally debilitating, even if such activities are not directly transferrable to a work setting.  See Molina v. Astrue, 674 F.3d 1104, 1112–13 (9th Cir. 2012), superseded by regulation on other grounds (noting "the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferrable to a work setting … Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (internal citations omitted); see also Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (affirming the ALJ's decision where the claimant's allegations were inconsistent with activities of personal care, shopping, chores, riding public transportation, and driving); Burch, 400 F.3d at 680 (finding the ALJ properly discounted the claimant's allegations where the claimant's activities suggest higher functionality, including caring for personal needs, cooking, cleaning, shopping, and interacting with family).

Here, the ALJ reasonably found that Plaintiff's ability shower, wash his hair, shop, and drive were inconsistent with his statement that he had complete loss of functionality with his right upper extremity.  The Court finds that the ALJ provided clear and convincing reasons to reject Plaintiff's symptom testimony.  Plaintiff's motion for summary judgment is denied on this ground.

**V.**

**CONCLUSION AND ORDER**

In conclusion, the Court finds that the ALJ erred by failing to address the supportability of Dr. Previte's medical opinion.  Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order.  It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Michael John Baez and

against Defendant Commissioner of Social Security.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **April 4, 2024**

UNITED STATES MAGISTRATE JUDGE